# WEBER v. STANDARD MINING & MILLING COMPANY

(No. 2075; December 5, 1938; 84 Pac. (2d) 752)

For the defendant and appellant, there was a brief and an oral argument by *George F. Dobler* of Lander.

458

For the respondent, there was a brief and oral arguments by *L. A. Crofts* of Lander, Wyoming, and *Fred S. Caldwell* of Denver, Colorado.

RINER, Justice.

Proceedings by direct appeal bring the record in this case here for review. The district court of Fremont County rendered a judgment in favor of the plaintiff in an action brought by S. H. Weber, Trustee, against the Standard Mining & Milling Company. This action was based upon a judgment obtained in the district court of the City and County of Denver, which had theretofore been brought in that jurisdiction by the same plaintiff against the same defendant.

The facts necessary to be considered are not particularly involved, and may briefly be stated as follows:

The Standard Mining & Milling Company, hereinafter usually referred to as the "lessee," being desirous of selling its securities and stock to the public, established an office for that purpose in the City of Denver, Colorado. In order to comply with the laws of the State of Colorado relative to engaging in such an enterprise, it filed, on December 5, 1931, in the office of the Secretary of State of that commonwealth, a power of attorney, duly authorized by formal resolution passed by its Board of Directors. This instrument, so far as material here, is worded thus:

"Know All Men By These Presents:

"That, pursuant to the provisions of Chapter 168 of the Session Laws of the State of Colorado, 1923, and also Fraudulent Practice Act Session Laws, 1931, Chapter 95, Standard Mining & Milling Company, a corporation, located in the City of Atlantic City, County of Fremont, in the State of Wyoming, and established under the laws of said State, hereby constitutes and appoints Chas. M. Armstrong, Secretary of State of the State of Colorado, or his successor in office, to be the true and lawful Attorney of said Corporation, within said State, upon whom all lawful processes in any action or proceedings against said Corporation in said State may be served, in like manner and with the same effect as if the said Corporation existed therein. And the said Corporation hereby stipulates and agrees that any lawful process against said Corporation which is served on its said Attorney, shall be of the same legal force and validity as if in fact served on said Corporation. This appointment and the authority of said Attorney shall continue in force so long as any liability remains outstanding against said Corporation in said State."

The president of the lessee stated in response to a question put to him at the trial of the action in Fremont County that in 1935 the business conducted at the Denver office consisted of having "the mechanical work * * * * done there, the stock books were there,

the accounts receivable, against the company, and the purchase of supplies, out of Denver, I think, and these other places, were transacted there"; that these supplies were hauled by the lessee's own truck to its mine in Wyoming. The plaintiff Weber, Trustee, testified on cross-examination at the same hearing, relative to the nature of the business of the lessee transacted in said office: "I do know this, that they held their meetings there and that is where their books were kept, and, furthermore, that the people that sold their material called there and interviewed their Mr. Gallagher, who was their then secretary-treasurer, and in general, carried on practically all the business that they tranacted except the mining end of it. They held their directors' meetings there."

Section 4 of the Fraudulent Practice Act of the State of Colorado, referred to in the power of attorney quoted above, so far as we are now concerned with its language, reads in part verbatim:

"Section 4. It shall be unlawful for any issuer who is required to file a prospectus under the Securities Act and shall also be unlawful for any dealer or salesman to sell, offer, negotiate or solicit the sale or purchase of any security unless and until he shall have appointed in writing, duly acknowledged under oath, the Secretary of State and his successors in office to be his true and lawful attorney, upon whom all legal process in any suit, action or proceeding based upon, growing out of or in any way connected with the violation of any of the terms and provisions of this Act or of any of the terms and provisions of the Securities Act or out of any fraud, deceit, breach of contract or other thing connected with the sale or offer for sale, subscription, negotiation of any security may be served. Such service upon the Secretary of State shall be of the same legal force and validity as if made upon such person within the State of Colorado."

Following this language of the statute are requirements that when process against the donor of the

power of attorney is served upon the Secretary of State, two copies thereof should be furnished and one of these copies should be sent to the person or company filing the power of attorney by the official named through registered mail.

In March, 1933, the plaintiff Weber, as Trustee, in consideration of the agreed payment by it to him of a reasonable rental value, alleged to be $40 per month, gave a lease on certain office furniture, fixtures and equipment to the lessee aforesaid. The lessee accordingly took possession immediately of this equipment and used it in its own offices located in another part of the City of Denver until the latter part of October, 1935. It never paid anything by way of rental for the use of said office equipment. During the latter part of the month last mentioned, the lessee closed its offices aforesaid, notified Weber, as Trustee to come and get the leased property, and withdrew from the State of Colorado.

On January 15, 1936, the plaintiff brought the action in the district court of the City and County of Denver as mentioned above, to recover the amount due from said lessee as rental of this office equipment. The Attorney General and the Secretary of State of the State of Colorado, were on January 16, 1936, each served with process in this action. No appearance was made by the lessee in the action in response to the process thus served, and the Colorado court, upon the proofs submitted to it, including the power of attorney executed and filed by the lessee, as detailed above, entered its judgment against the latter in the full sum of $1,302.40, including interest. The action in the district court of Fremont County thereafter instituted was, as recited above, grounded upon the judgment thus obtained.

It is alleged for the lessee in criticism of the judgment now under review, that the district court of the

City and County of Denver was without jurisdiction to render a personal judgment against said lessee and that the lease contract aforesaid was not "connected with" the sale or offer for sale, subscription or negotiation of any of its stock or securities. As we understand the matter, these are the only contentions made here. With them we are obliged to disagree.

We may note first that the lessee concedes in its brief: "Service of process under the Power of Attorney filed with the Secretary of State, could be made on the Standard Mining and Milling Company by serving its authorized agents for service, only 'in any suit, action or proceeding based upon, growing out of or in any way connected with the violation of any of the terms and provisions of this act (Fraudulent Practice Act 1931) or of any of the terms and provisions of the Securities Act or out of any fraud, deceit, breach of contract or other thing connected with the sale or offer for sale, subscription, negotiation of any security.' "

It was apparently the view of the trial court, in which view we concur, that a person who under contract furnished the office equipment in an office for the purpose of facilitating the carrying on of the business of selling stock and securities of the company establishing and conducting said office, could and should be held liable personally under Section 4 of the statute quoted above and the power of attorney filed in connection therewith as on a contract "connected with the sale or offer for sale, subscription, negotiation" of such stock or security.

Among the meanings assigned by Webster's New International Dictionary (2d Ed.) to the verb "connect," especially when used with the preposition "with," is "to regard as associated."

The Supreme Court of Michigan in the case of Allison v. Smith, 16 Mich. 405, 433, held that the word "connected" as used by the Legislature in a statute

providing that a devise, gift or bequest of real estate, etc. should be void so far as such devise, etc. should be for the use of any church, religious society or for the use of any ecclesiastical or educational institution "connected or to be connected" with any such church, etc., unless the will containing the bequest or devise aforesaid should have been executed at least two months prior to decedent's death, was used according to its common and approved usage of the language, and the court said:

"The legislature must then have intended by the word 'connected,' the thought which that word represented according to the 'common and approved usage of the language.'

"According to that usage at the time the act was passed, the word in question denoted any relation, whether organic or conventional by which one was 'linked' or 'united' to another. The word 'affiliated,' as sometimes used, was quite synonymous with it."

In Carpenter v. Manhattan Life Insurance Co., 93 N. Y. 552, Judge Earl, discussing the phrase "connected with" the subject of the action in the Practice Codes, said:

"The word 'connected' may have a broad signification. The connection may be slight or intimate, remote or near, and where the line shall be drawn it may be difficult sometimes to determine."

Concerning the language considered by the New York Court of Appeals as aforesaid, we find Mr. Pomeroy in his "Code Remedies," Third Edition, Section 776, pages 846-847, saying:

"In respect to the phrase 'connected with' the subject of the action, one rule may be regarded as settled by the decisions, and it is recommended by its good sense, and its convenience in practice. The connection must be immediate and direct. A remote, uncertain, partial connection is not enough to satisfy the requirements of

the statute. The criterion proposed by the Supreme Court of Indiana in one of the cases cited is as certain and practical as the nature of the subject admits, and only needs to be known to be universally accepted. It is, that the connection must be such that the parties could be supposed to have foreseen and contemplated it in their mutual acts; in other words, that the parties must be assumed to have had this connection and its consequences in view when they dealt with each other."

See also Lapham v. Osborne, 20 Nev. 168, 18 Pac. 881; Siebrecht v. Siegel-Cooper Co., 38 Appellate Div. 549, 56 N. Y. Sup. 425.

In Morey v. Standard Separator Co., 174 Iowa 530, 156 N. W. 719, 720, it was held that an action by the plaintiff for agreed commissions on sales made by him was an action connected with the business of the office or agency within the meaning of this phrase employed in a statute providing where a corporation or individual has for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in the office or agency in all actions growing out of or "connected with the business of that office or agency."

And 12 C. J. 505 says:

"Connected, in the past tense, is quite synonymous with 'affiliated,' as sometimes used, and denotes any relation, whether organic or conventional, by which one is 'linked' or 'united' to another, being defined as bound or fastened together, united, joined or coupled to. It may have a broad signification, the connection being slight or intimate, remote or near."

We think it reasonably clear that the contract for the use of the office equipment in question, consisting of desks, chairs, table, stationery cabinet, letter file, etc., was "connected with" the lessee's sale and negotiation of its securities and stock from the office it

established for that purpose just as much so as the contract for the lease for the office itself. Both were common business arrangements for facilitating transactions of such a character. The subject matter concerning which suit could be brought and process served according to the language of Section 4 of the Session Laws of Colorado for 1931, Chapter 95, as quoted above, was not alone a contract itself for the sale of the securities or stock of the lessee, but also for "any * * * * breach of contract or other thing connected with" such a contract of sale. In our view of the matter, the connection of the lease contract involved here with the sale of the lessee's stock and securities was sufficiently closely enough associated with that enterprise to bring it within the terms of the Colorado law and the power of attorney the lessee filed, as above described, in the office of the Secretary of State in that jurisdiction.

It is not unreasonable to conclude that when the lessee filed its power of attorney it contemplated that in the establishment of its office in Denver for the sale of its securities, it would incur obligations such as bills for writing materials, printing, rent of the office and its equipment, clerk hire, etc., which it intended to and should pay. To conclude otherwise would be to assume that it intended to establish the office aforesaid, but not to pay for these proper and necessary requirements for its conduct; in other words to perpetrate a fraud upon the people who supplied these things. We do not think such an assumption could or should be made in this case. The lessee certainly regarded the establishment of the office as essential to and necessary to the sale of its stock and securities or it would not have established it as it did.

The fact that the lessee had withdrawn from the State of Colorado before the action for the rental of the equipment was begun does not change the legal

aspect of this matter, for as said by 18 Fletcher's Cyclopedia of the Law of Private Corporations, Section 8762, Pages 575-576: "The fact that, after a cause of action has arisen against a foreign corporation doing business in the state, it withdraws from the state, will not prevent service upon it being obtained by serving the secretary of state or other public official, as provided by statute, because the appointment of the state official as process agent is a power coupled with an interest, and, therefore, irrevocable."

Our conclusion is, therefore, that the judgment of the district court was entirely correct, and it is accordingly affirmed.

*Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.